2014 ND 24

**Tammy Renee WAMPLER, Appellee**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Appellant.**

No. 20130330.

Supreme Court of North Dakota.

Feb. 13, 2014.

Douglas B. Anderson, Office of Attorney General, Bismarck, ND, for appellant.

Tammy Renee Wampler; no appearance.

KAPSNER, Justice.

[¶1] The North Dakota Department of Transportation ("Department") appeals from a district court judgment reversing an administrative hearing officer's decision suspending Tammy Renee Wampler's driving privileges. Because we hold inclusion of the phrase "by weight" in the "Test Results" portion of a law enforcement officer's certified written report under N.D.C.C. § 39–20–03.1(4) is not necessary to satisfy N.D.C.C. § 39–20–03.1, we reverse the district court judgment and reinstate the administrative hearing officer's decision.

I

[¶2] On April 18, 2013, a Jamestown city police officer received a call regarding an intoxicated driver. A description of the

vehicle and license plate was provided. The officer arrived on the scene, located the vehicle, and observed it weaving between lanes. The officer initiated his overhead lights, but the vehicle continued to drive for almost half a mile before it came to a stop, and it did so only after the officer turned on his siren. The officer approached the vehicle and spoke to the driver, Wampler, who was the only occupant. While speaking with Wampler, the officer observed that she had glossy/watery eyes, slurred speech, slow movements, and a strong odor of alcohol. Wampler admitted to consuming alcohol and agreed to submit to field sobriety tests. The officer administered three field sobriety tests, and Wampler failed two of them and could not complete the other. Wampler submitted to an on-site chemical screening test, which indicated an alcohol concentration level of at least .08. Wampler was then placed under arrest for Driving Under the Influence. Within two hours of driving, Wampler submitted to an intoxilyzer breath test. The test results showed Wampler's alcohol concentration was 0.159. When the officer completed his certified written report to the director ("Report and Notice"), he wrote "0.159" in the "Test Results" blank.

[¶ 3] Wampler made a timely request for an administrative hearing with the Department. At that hearing, Wampler raised three arguments, one of which was that the Department lacked the authority to revoke her driving privileges because the law enforcement officer failed to write "by weight" next to the notation "0.159" in the "Test Results" blank of his Report and Notice. The administrative hearing officer rejected Wampler's argument, holding "the failure to write 'by weight' is not jurisdictional." The administrative hearing officer suspended Wampler's driving privileges for 91 days, and Wampler appealed to the district court, raising all three issues.

[¶ 4] The district court determined that N.D.C.C. § 39–20–03.1(4) required the law enforcement officer to complete a certified written report which indicated that test results showed Wampler had a blood alcohol concentration of .08 or greater by weight, that this was a basic and mandatory provision of the statute under prevailing case law, and that, while the law enforcement officer's Report and Notice included the notation "0.159" in the "Test Results" blank, the omission of the phrase "by weight" stripped the Department of authority to suspend Wampler's driving privileges. The district court determined this was the dispositive issue on appeal and did not address Wampler's other arguments. The district court reversed the decision of the administrative hearing officer and ordered that Wampler's driving privileges be restored.

[¶ 5] The Department appeals the district court judgment reversing the administrative hearing officer's decision suspending Wampler's driving privileges. Wampler does not respond to the appeal.

II

[¶ 6] On appeal from the district court judgment, the Department argues it had authority to suspend Wampler's driving privileges despite omission of the phrase "by weight" on the Report and Notice. In an appeal of a district court's review of an administrative agency's decision, this Court reviews the administrative agency's decision. *Steinmeyer v. Dep't of Transp.*, 2009 ND 126, ¶ 8, 768 N.W.2d 491.

This Court's review of an administrative decision to suspend a driver's license is governed by the Administrative Agencies Practice Act. The review is limited to the record before the adminis-

trative agency. We review the administrative hearing officer's decision and give deference to the administrative hearing officer's findings. We do not, however, make independent findings or substitute our judgment for that of the agency. Rather, we determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record.

*Pesanti v. N.D. Dep't of Transp.*, 2013 ND 210, ¶ 7, 839 N.W.2d 851 (citations and internal quotation marks omitted). "This Court reviews questions of law de novo and gives deference to the Department's sound findings of fact." *Steinmeyer*, at ¶ 8 (citations omitted). This Court must affirm an administrative hearing officer's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46; *see also Pesanti*, at ¶ 7.

## III

[¶ 7] "The Department's authority to suspend a person's license is given by statute and is dependent upon the terms of the statute." *Aamodt v. N.D. Dep't of Transp.*, 2004 ND 134, ¶ 15, 682 N.W.2d 308. "The Department must meet the basic and mandatory provisions of the statute to have authority to suspend a person's driving privileges." *Id.* (citing *Schwind v. Director, N.D. Dep't of Transp.*, 462 N.W.2d 147, 150 (N.D.1990)). However, the terms of the statute "must be construed logically so as not to produce an absurd result." *Schwind*, at 150 (citation omitted). This Court has previously discussed whether certain provisions of N.D.C.C. § 39–20–03.1 are basic and mandatory provisions that require compliance before the Department is authorized to suspend a person's driving privileges. *Compare Schwind*, at 150 (holding a law enforcement officer's failure to forward an operator's license to the director would not destroy the Department's authority to suspend a violator's driving privileges), and *Samdahl v. N.D. Dep't of Transp. Director*, 518 N.W.2d 714, 717 (N.D.1994) (holding the law enforcement officer's failure to immediately issue a temporary permit would not deprive the Department of its authority to suspend a person's driving privileges), *with Bosch v. Moore*, 517 N.W.2d 412, 413 (N.D.1994) (holding a law enforcement officer's failure to submit an Intoxilyzer test record to the Department does deprive the Department of its authority to suspend driving privileges).

[¶ 8] Under the controlling statute at the time of Wampler's arrest, if a person's blood, breath, or urine test results show an alcohol concentration of eight one-

hundredths of one percent by weight or more, the law enforcement officer must forward a certified written report to the director. *See* N.D.C.C. § 39–20–03.1 (2011). This report must show: (1) "that the officer had reasonable grounds to believe the individual had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01, or equivalent ordinance,"; (2) "that the individual was lawfully arrested,"; (3) "that the individual was tested for alcohol concentration under this chapter,"; and (4) "that the results of the test show that the individual had an alcohol concentration of at least eight one-hundredths of one percent by weight . . . ." N.D.C.C. § 39–20–03.1(4) (2011). "A properly completed report meeting 'the basic and mandatory provisions of the statute,' along with the other matters required by the statute, is intended to give the Department the authority to suspend a driver's license and to provide a driver the means 'to know what the officer was relying on[.]' " *Jorgensen v. N.D. Dep't of Transp.*, 2005 ND 80, ¶ 12, 695 N.W.2d 212 (citations omitted).

[¶ 9] In *Jorgensen*, 2005 ND 80, ¶¶ 12–13, 695 N.W.2d 212, this Court held that inclusion of the blood alcohol test results in the law enforcement officer's certified written report is a basic and mandatory provision of the statute [1], without which the Department may not suspend a person's driving privileges. *See also Aamodt*, 2004 ND 134, ¶¶ 25–26, 682 N.W.2d 308 (holding inclusion of the statement of probable cause on the report is a basic and mandatory provision of the statute). In *Jorgensen*, the law enforcement officer did not record the results of Jorgensen's blood alcohol test on the Report and Notice. *Jorgensen*, at ¶ 3. The "Test Results" blank was left empty, but Jorgensen was given a copy of the analytical report show-

ing the test results. *Id.* at ¶¶ 3–4. In concluding that failure to include the test results on the Report and Notice deprived the Department of authority to suspend Jorgensen's driving privileges, this Court reasoned:

Section 39–20–03.1, N.D.C.C., reflects a legislative intent to remove drunk drivers from the roads without slanting the law too much toward the Department's convenience. *Aamodt*, 2004 ND 134, ¶ 24, 682 N.W.2d 308. Section 39–20–05(1), N.D.C.C., gives a driver only a short time—ten days—after the issuance of a temporary operator's permit within which to request a hearing to challenge the suspension of his or her driving privileges. Thus, in determining whether to request a hearing, it is important that a driver facing the loss of driving privileges be able to quickly, conveniently, and certainly know what the officer is relying on. That information will be more quickly, conveniently, and certainly conveyed to the driver by inserting in the appropriate blank space on the report and notice form the results of the test than by giving the driver a copy of the analytical report of the analysis of the blood sample tested, which may well be confusing to one unacquainted with such documents. The legislature's intent will be best fulfilled by a bright-line requirement that the report and notice form contain the test result, as specified in N.D.C.C. § 39–20–03.1[ (4) ].

*Jorgensen*, at ¶ 13.

[¶ 10] The case before us is distinguishable from *Jorgensen*. In *Jorgensen*, no test results were included on the Report and Notice, and the defendant was left to decipher the analytical report to learn the results of his test. In this case,

---

1. This requirement was previously codified at N.D.C.C. § 39–20–03.1(3).

Wampler submitted to a breath test using the Intoxilyzer 8000, which reports alcohol concentration by weight, "as grams of alcohol per two hundred ten liters of end expiratory breath." Wampler's test results indicated she had an alcohol concentration of 0.159. It is not clear how adding the phrase "by weight" to the law enforcement officer's certified written report would provide more information to the driver. The Report and Notice form includes a reference to Chapter 39–20, N.D.C.C. The law enforcement officer noted on the Report and Notice that Wampler submitted to a breath test. In the "Test Results" blank, the officer wrote "0.159." These notations quickly, conveniently, and certainly informed Wampler what the officer had relied on and allowed her to make the decision whether to request a hearing. Inclusion of the specific phrase "by weight" on the law enforcement officer's certified written report to the director is not necessary to satisfy N.D.C.C. § 39–20–03.1. The Department therefore had authority to suspend Wampler's driving privileges.

### IV

[¶ 11] We conclude the administrative hearing officer's findings are supported by the weight of the evidence on the entire record, the conclusions are supported by the findings, and the order is in accordance with the law. Therefore, we reverse the district court judgment and reinstate the administrative hearing officer's decision to suspend Wampler's driving privileges.

[¶ 12] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS, and DALE V. SAND-STROM, JJ., concur.