2014 ND 161

**Ducote Brown HAYNES, Appellant**

v.

**DIRECTOR, DEPARTMENT OF TRANSPORTATION, Appellee.**

No. 20140047.

Supreme Court of North Dakota.

July 31, 2014.

Thomas M. Tuntland, Mandan, N.D., for appellant.

Douglas B. Anderson, Office of Attorney General, Bismarck, N.D., for appellee.

McEVERS, Justice.

[¶ 1] Ducote Brown Haynes appeals from a district court judgment affirming a North Dakota Department of Transportation hearing officer's decision revoking his driving privileges for 180 days. We affirm, concluding the Department had authority to revoke Haynes' driving privileges in this state.

I

[¶ 2] On July 27, 2013, Officer Joshua Brown of the Bismarck Police Department arrested Haynes for being in actual physical control of a motor vehicle while under the influence of intoxicating liquor. Before arresting Haynes, Brown read him the implied consent advisory and asked him to take an on-site screening test, but Haynes refused. Brown arrested Haynes, read him the implied consent advisory a second time, and requested that he take a chemical test, but Haynes again refused.

[¶ 3] Brown transported Haynes to the jail, but he did not have a copy of the correct Report and Notice form for Haynes. Brown went to the police station to obtain and fill out the Report and Notice. Brown's shift ended shortly after he filled out the Report and Notice and he requested another officer, Michael Paulson, issue the Report and Notice and deliver it to Haynes at the jail. Paulson testified he delivered the Report and Notice to the jail and placed it in an elevator for jail staff to retrieve.

[¶ 4] On July 31, 2013, Haynes requested an administrative hearing regarding the revocation of his driving privileges. At the hearing, Haynes argued the Department did not have authority to revoke his license because he was not immediately issued the Report and Notice. The hearing officer found Haynes received the Report and Notice and revoked Haynes' driving privileges for 180 days.

[¶ 5] Haynes appealed the decision to the district court, arguing the hearing officer erred in finding the Department had authority to revoke his license because the Report and Notice was not immediately issued and was not personally served on

him. The district court affirmed the hearing officer's decision.

## II

[¶ 6] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs the review of a decision to revoke driving privileges. *See Ike v. Director, N.D. Dep't of Transp.*, 2008 ND 85, ¶ 6, 748 N.W.2d 692. In an appeal from a district court's review of an administrative agency's decision, we review the agency's decision. *Wampler v. N.D. Dep't of Transp.*, 2014 ND 24, ¶ 6, 842 N.W.2d 877. Our review is limited and we give great deference to the agency's findings. *Id.* We do not make independent findings of fact or substitute our judgment for that of the agency; instead, we determine whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. *Id.* We must affirm the agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of [chapter 28–32] have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46; *see also Ike,* at ¶ 6.

## III

[¶ 7] Haynes argues the Department did not have authority to revoke his driving privileges because N.D.C.C. § 39–20–04 requires the law enforcement officer "immediately issue" and personally serve a temporary operator's permit and there was no proof these requirements were met in this case.

[¶ 8] The Department's authority to revoke or suspend a person's driving privileges is given by statute, and the Department must meet the basic and mandatory provisions of the statute to have authority to revoke or suspend a person's driving privileges. *Aamodt v. N.D. Dep't of Transp.*, 2004 ND 134, ¶ 15, 682 N.W.2d 308. However, we have said the "failure to strictly comply with the law does not necessarily deprive the Department of its authority under the law." *Potratz v. N.D. Dep't of Transp.*, 2014 ND 48, ¶ 13, 843 N.W.2d 305. " 'While the jurisdiction of an administrative agency is dependent upon the terms of a statute, these terms must be construed logically so as not to produce an absurd result.' " *Schock v. N.D. Dep't of Transp.*, 2012 ND 77, ¶ 27, 815 N.W.2d 255 (quoting *Schwind v. N.D. Dep't of Transp.*, 462 N.W.2d 147, 150 (N.D.1990)).

[¶ 9] Section 39–20–04, N.D.C.C., governs revocation of driving privileges upon refusal to submit to testing and states, "If a person refuses to submit to testing under section 39–20–01 or 39–20–14, none may be given, but the law enforcement officer shall immediately take possession of the per-

son's operator's license if it is then available and shall immediately issue to that person a temporary operator's permit...." However, N.D.C.C. § 39–20–03.2 applies when a nonresident operator refuses to submit to testing and provides:

If a person licensed in another state refuses in this state to submit to a test provided under section 39–20–01 or 39–20–14 ... the following procedures apply:

1. Without taking possession of the person's out-of-state operator's license, the law enforcement officer shall issue to the person a notification of the test results and a temporary operator's permit extending nonresident operating privileges in this state for twenty-five days from the date of issuance or until earlier terminated by the decision of a hearing officer under section 39–20–05. The temporary permit must be signed and dated by the officer and serves as the director's official notification to the person of the director's intent to revoke, suspend, or deny driving privileges in this state, and of the hearing procedures under this chapter.

. . . .

3. The law enforcement officer, within five days of issuing the temporary operator's permit, shall forward to the director a certified written report in the form required by the director.... If the individual was issued a temporary operator's permit because of the individual's refusal to submit to a test under sections 39–20–01 and 39–20–14, the report must include information as provided in section 39–20–04.

■ [¶ 10] Haynes is an Arkansas resident and has an Arkansas driver's license. Therefore, the procedure provided

in N.D.C.C. § 39–20–03.2 applies. Section 39–20–03.2(1), N.D.C.C., does not require the officer "immediately issue" a temporary operator's permit. *Contra* N.D.C.C. § 39–20–04. The plain language of N.D.C.C. § 39–20–03.2(1) requires the officer issue to the person a temporary operator's permit, but the statute does not require the temporary permit be issued "immediately" or include any other time requirement for issuance of the temporary permit. Furthermore, this Court has held the statutory requirement that an officer "immediately" issue a temporary operator's permit is not jurisdictional and the Department has authority to suspend or revoke driving privileges when there is a delay in the issuance of the temporary operator's permit if the person is not prejudiced by the delay. *See Samdahl v. N.D. Dep't of Transp. Director,* 518 N.W.2d 714, 717 (N.D.1994) (Department had jurisdiction under N.D.C.C. § 39–20–03.1 to suspend a driver's license when the immediacy requirement was not met and there was more than a month delay between the blood test and giving notice of intent to suspend driving privileges). Here, the evidence presented does not establish Haynes was prejudiced by any delay in issuing the temporary operator's permit.

■ [¶ 11] Haynes also argues the statute requires personal service of the temporary operator's permit. This Court addressed a similar issue in *Ike,* 2008 ND 85, ¶ 7, 748 N.W.2d 692, and said:

When a driver is found to have an alcohol concentration level exceeding the per se limit, N.D.C.C. § 39–20–03.1(1) requires an officer to "immediately issue to that person a temporary operator's permit if the person then has valid operating privileges." In cases where blood or other chemical testing is performed by the state crime laboratory, N.D.C.C.

§ 39–20–03.1(2) requires that law enforcement "issue" a temporary operator's permit upon receipt of laboratory results. "Service" is not required under either provision. It is apparent, however, that issuing the temporary permit was intended by the Legislature to satisfy due process requirements for notice to the driver. *See* N.D.C.C. § 39–20–03.1(1) ("temporary operator's permit serves as the director's official notification to the person of the director's intent to revoke, suspend, or deny driving privileges in the state"). This is true even though issuing a temporary permit does not require all of the formality of service of process.

We held a statute that requires an officer "issue" a temporary permit does not require "service" of the temporary permit. *Ike*, at ¶ 7.

[¶ 12] The same reasoning applies in interpreting N.D.C.C. § 39–20–03.2, which requires the law enforcement officer "issue" the temporary permit. The statute also states the temporary permit serves as official notification of the director's intent to revoke, suspend, or deny driving privileges in this state and of the hearing procedures, indicating issuing the temporary permit satisfies due process requirements. N.D.C.C. § 39–20–03.2(1). We conclude personal service of the Report and Notice, containing the temporary operator's permit, is not required under N.D.C.C. § 39–20–03.2.

◼ [¶ 13] However, the issuance of a temporary operator's permit is a basic and mandatory requirement of N.D.C.C. § 39–20–03.2. *See Ike*, 2008 ND 85, ¶ 8, 748 N.W.2d 692. The permit serves as official notification of the director's intent to revoke or suspend driving privileges and was intended to satisfy due process notice requirements. N.D.C.C. § 39–20–03.2(1) (temporary permit is an official notification of the intent to revoke driving privileges); *Ike*, at ¶ 7. The time limit for requesting an administrative hearing also begins when the permit is issued. N.D.C.C. § 39–20–05(1) (request for a hearing must be made within ten days after the date of issuance of the temporary operator's permit). The issuance of the temporary permit is vital to revocation proceedings, and therefore the Department does not have authority to revoke a person's driving privileges if the person is not issued a temporary operator's permit. *See Ike*, at ¶ 8.

◼ [¶ 14] In this case, the hearing officer found Brown filled out and Paulson issued the Report and Notice containing the temporary operator's permit. The hearing officer found Paulson gave the Report and Notice to jail staff to place in Haynes' property. Brown testified that he did not have a copy of the correct Report and Notice form with him when he arrested Haynes for actual physical control, he went to the police station to get the correct copy of the form and he filled it out, but he was nearing the end of his shift and he asked another officer to take the Report and Notice to the jail for him. Paulson testified that he delivered the Report and Notice to the jail the same day Haynes was arrested, he delivered the Report and Notice to jail staff by placing it in an elevator where the staff would retrieve it, and he signed that it was delivered. The hearing officer found Haynes received the Report and Notice and timely requested a hearing. The Report and Notice indicates Paulson issued the temporary operator's permit to Haynes on July 27, 2013. Haynes did not present any evidence or argue that he did not receive the Report and Notice. Haynes timely requested a hearing on July 31, 2013, four days after the Report and Notice was issued, suggesting he received the Report and Notice.

[¶ 15] We are concerned with and do not condone the practice of leaving the Report and Notice in an elevator to be retrieved by jail staff. We have warned that potentially prejudicial conduct may warrant reversal if it becomes commonplace. *See Schock*, 2012 ND 77, ¶ 40, 815 N.W.2d 255. However, the record in this case does not warrant reversal. A reasoning mind reasonably could conclude Haynes received the Report and Notice, and the hearing officer's findings are supported by the weight of the evidence on the entire record. We conclude the basic and mandatory requirements of N.D.C.C. § 39–20–03.2 were met, and the Department had authority to revoke Haynes' driving privileges.

IV

[¶ 16] We affirm the district court judgment affirming the hearing officer's decision to revoke Haynes' driving privileges in this state.

[¶ 17] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.